## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

SEBASTIAN A. CAMPBELL,

    Plaintiff,

    v.                           Civil Action No.:  SAG-22-636

ROBERT GREEN, et al.,

    Defendants.

## MEMORANDUM

Self-represented plaintiff Sebastian A. Campbell, currently incarcerated at North Branch Correctional Institution ("NBCI"), filed the above-captioned civil rights Complaint alleging that on June 14, 2020, Defendants failed to protect him from an assault by another inmate while he was housed at Jessup Correctional Institution ("JCI") and failed to provide adequate medical care following the alleged assault.  ECF No. 1.  Campbell also alleges that a fire was set on his tier and that he was left to suffer smoke inhalation.[1]  *Id*.  In response, defendants Robert Green, Secretary of the Department of Public Safety and Correctional Services ("DPSCS"); Allen Gang, Warden at JCI; Antoinette Washington, Chief of Security at JCI; Lt. Winthrow; Lt. Earl Brown; Sgt. Walker; Officer Alexander Jator; and Officer Yacoub Adesiyan filed a motion to dismiss or for summary

---

[1] Campbell alleges that during a fire on June 9, 2020, unnamed officers "refused to extinguish the blaze; refused to evacuate the inmates; and, declined plaintiff'[s] repeated requests for medical treatment due to smoke inhalation." ECF No. 1 at 3.  He does not allege that any of the named defendants were involved in the June 9, 2020 fire, and he states that "[t]he incident that is the basis for this complaint occurred five (5) days later on June 14, 2020." *Id*.  Based on Campbell's statements and the fact that he does not allege any action or inaction on behalf of the named defendants regarding the June 9, 2020 fire, it does not appear that Campbell intends to pursue these allegations as claims in this case.  To the extent that he does intend to pursue claims regarding the June 9, 2020 fire, he fails to state a claim as he does not allege that any particular defendant's actions or inactions violated his rights on that date.

judgment asserting in pertinent part that plaintiff did not exhaust administrative remedies before filing his complaint with this court.[2]  ECF No. 38.  Campbell opposes the motion.

Also pending are Campbell's Motion for Discovery pursuant to Federal Rule of Civil Procedure 56(d), ECF No. 48; Campbell's Motion for Conditional Withdrawal, ECF No. 53; Defendants' Motion for Extension of Time, ECF No. 55; and Campbell's Response to Defendants' Reply, construed and docketed as a Motion for Leave to File a Surreply, ECF No. 58.

No hearing is required to consider the pending matters.  *See* Local Rule 105.6 (D. Md. 2023).  For the reasons that follow, the Complaint must be dismissed without prejudice for failure to exhaust administrative remedies.  Campbell's Motions for Discovery and Conditional Withdrawal will be denied without prejudice and his Motion for Leave to File a Surreply will be granted.  Defendants' Motion for Extension of Time will be granted *nunc pro tunc*.

## BACKGROUND

### A.  Campbell's Allegations and Defendants' Response

Campbell's Complaint, filed on March 15, 2022, alleges that on June 14, 2020, he was confined in the disciplinary segregation at JCI when an inmate was released from his cell without being handcuffed.  That inmate proceeded to collect bags of "feces and other toxic or caustic materials" from the other inmates on the tier and exploded the mixture into cells by placing "the zip-lock end of the bag through a crack in the cell door, side or floor, and then forcefully clap[ping] or stomp[ing] the bag to eject the contents."  ECF No. 1 at 4.  Plaintiff alleges that defendants "calmly sat on the desk at the front of the tier while inmate Watson . . . collected and detonated at least six (6) shit bombs into plaintiff's and othe[r] inmate's cells," and that they "only deployed a

---

[2] Campbell initially identified defendants Officer Yacoub Adesiyan, Officer Alexander Jator, and Lt. Earl Brown as John Does.  ECF No. 1.  He subsequently identified them by way of a supplemental complaint, ECF No. 31, and the defendants were added to the docket.  ECF No. 43.  Defendants Adesiyan, Jator, and Brown then joined in the other defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment.  ECF Nos. 47, 50.

short burst of pepper spray when inmate Watson approached in their specific direction[s]." *Id*. Campbell alleges that he was a victim of a "shit bomb," was "forced to languish in feces and urine for hours," and was not seen by medical personnel for nine days following the assault. *Id*. at 5. He further alleges that he was "not provided cleaning products or a shower for nearly 36 hours." *Id*. Campbell filed an Administrative Remedy Procedure complaint ("ARP") regarding the incident.[3] *Id*. at 1.

Defendants filed a Motion to Dismiss, or in the Alternative, for Summary Judgment and Memorandum in Support, which argues that 1) Defendants are immune from suit in their official capacities under the Eleventh Amendment; 2) Defendants Green, Gang, and Washington were not personally involved in the incident nor are they subject to supervisory liability; 3) Defendants did not violate Campbell's constitutional rights by failing to protect him from harm; 4) Campbell's claims are barred by collateral estoppel and res judicata; 5) Defendants did not act with deliberate indifference to a serious medical need by failing to provide Campbell with adequate medical care; 6) Campbell failed to state a conditions of confinement claim; 7) Campbell failed to exhaust administrative remedies prior to filing suit; and 8) Defendants are entitled to qualified immunity. ECF Nos. 38, 38-1. Campbell timely filed a Response in Opposition to Defendants' dispositive Motion to which Defendants replied.[4] ECF Nos. 54 and 57. Campbell then filed a surreply.[5] ECF No. 58.

---

[3] The administrative procedural history of Campbell's grievance is outlined in detail below.

[4] Defendants filed a Motion for Extension of Time to file their reply to Campbell's opposition response, ECF No. 55, which Campbell opposed, ECF No. 56. Defendants' Motion will be granted *nunc pro tunc*.

[5] Although not styled as such, Campbell's additional filing, ECF No. 58, was docketed as a Motion for Leave to File a Surreply, because no party is entitled to file a surreply unless otherwise ordered by the Court. *See* Local Rule 105.2(a) (D. Md. 2023). A surreply is most often permitted when the moving party must respond to matters raised for the first time in a reply. *See Lewis v. Rumsfeld*, 154 F. Supp. 2d 56, 61 (D. D.C. 2001). However, because Defendants did not oppose Campbell's surreply, Campbell shall be granted leave to file it.

### B. Administrative Review Process

Campbell filed an ARP on June 15, 2020, regarding the June 14, 2020, incident.  ECF No. 38-3 at 78.[6]  The ARP was dismissed for procedural reasons on June 19, 2020, with instructions to resubmit it with a date and signature.  *Id*.  Campbell resubmitted the ARP on June 24, 2020, and it was marked received on June 29, 2020.  *Id*. at 83.   A Case Summary was completed on July 17, 2020, which recommended dismissal of the ARP.  *Id*. at 80-82.  The Warden dismissed the ARP, although the date of his dismissal is unclear.  *Id*. at 85.

On July 30, 2020, Campbell filed an appeal with the Commissioner of Corrections, stating that the Warden had not responded to his ARP.  *Id*. at 87. On October 28, 2020, Campbell filed an appeal with the Inmate Grievance Office ("IGO") stating that he was proceeding with his appeal to the IGO because the Commissioner had not yet responded to his appeal.  ECF No. 38-6 at 67. Campbell was notified on October 30, 2020, that his ARP had been found meritorious in that the Warden had failed to respond within the prescribed timeframe, but that it was otherwise dismissed. ECF No. 38-3 at 91.  Campbell's appeal to the IGO was marked received on December 8, 2020. *Id*. at 67.

On January 20, 2021, the IGO sent a letter to Campbell stating that it received his grievance on December 8, 2020, that it was deemed an appeal from an ARP, but that it did not include a copy of the appeal to the Commissioner or the Commissioner's response.  ECF No. 38-6 at 65-66.  The letter directed Campbell to submit the required paperwork within 30 days.  *Id*.  On February 18, 2021, Campbell wrote a letter to IGO Deputy Director Woolford including the required documents and noting that he had already sent them on December 25, 2020.  *Id*. at 59.  On April 21, 2021, Campbell again wrote to IGO Deputy Director Woolford stating that he had immediately sent the

---

[6] Defendants submitted two sets of records regarding the administrative review process for the June 14, 2020 incident: JCI records, ECF No. 38-3, and Inmate Grievance Office ("IGO") records, ECF No. 38-6.

documentation requested, advised that he intended to seek judicial review of any adverse ruling, and stated that he needs a final decision from the IGO in order to do so. *Id*. at 58. The record does not reflect that Deputy Director Woolford or anyone else responded to Campbell's letter or that any other action was taken by the IGO for several months.

On November 29, 2021, the IGO issued a preliminary review and referral and a notice that the matter would be set for a hearing. ECF No. 38-6 at 51-54. On December 7, 2021, perhaps having not yet received a copy of the preliminary review and referral, Campbell sent a letter to IGO Director Taylor stating that because Deputy Director Woolford failed to issue a final decision, he believed he had exhausted his administrative remedies. *Id*. at 49. On December 10, 2021, IGO Director Taylor replied to Campbell's letter, explaining that Deputy Director Woolford referred the case for a hearing, which was scheduled for February 23, 2022. *Id*. at 48. On December 27, 2021, Campbell submitted a request for witnesses, documents, and other evidence, which was stamped received on December 29, 2021. *Id*. at 37-38, 44. The IGO transmitted the file for hearing on February 9, 2022, however the hearing was postponed because Campbell's request for evidence had been lost. *Id*. at 41. On March 11, 2022, a notice of hearing was issued rescheduling the hearing for June 16, 2022. *Id*. at 40. On March 15, 2022, Campbell filed the instant Complaint. ECF No. 1.

On June 16, 2022, the Administrative Law Judge ("ALJ") ordered the hearing postponed again, due to the IGO's refusal to provide Campbell with relevant records. ECF No. 38-6 at 28. On June 28, 2022, Campbell's request for medical records was granted and his request for inmate disciplinary records was denied. *Id*. at 27. On June 29, 2022, the hearing was again rescheduled for September 21, 2022. *Id*. at 26. The hearing, in which Campbell participated and testified, was

finally held on September 21, 2022, and the ALJ issued a decision dismissing the grievance on December 5, 2022. *Id.* at 5-18.

**STANDARD OF REVIEW**

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The court may "consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic[.]" *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citation omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48 (emphasis in original).

The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

Defendants' Motion is styled as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56(a). A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery Cty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011). Conversion of a motion to dismiss to one for summary judgment under Rule 12(d) is permissible where a plaintiff has "actual notice" that the motion may be disposed of as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for a court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; a court "does not have an obligation to notify parties of the obvious." *Laughlin*, 149 F.3d at 261. Because Defendants filed their motion as a motion to dismiss, or in the alternative, for summary judgment, Campbell was on notice that the Court could treat the motion as one for summary judgment and rule on that basis.

Campbell has filed a Motion for Discovery pursuant to Rule 56(d) supported by an affidavit. ECF Nos. 48 and 48-1. To raise adequately the issue that discovery is needed, the nonmovant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule

56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). "[T]o justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A nonmoving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see McClure v. Ports,* 914 F.3d 866, 874-75 (4th Cir. 2019); *Gordon v. CIGNA Corp.,* 890 F.3d 463, 479 (4th Cir. 2018); *Amirmokri v. Abraham,* 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a nonmoving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted). But, the nonmoving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. And, a court "should hesitate before denying a Rule 56(d) motion when the nonmovant seeks necessary information possessed only by the movant." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014).

Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an

adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id.* (internal citations omitted).  According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Id.* at 244-45 (internal citations omitted); *see also Putney*, 656 F. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 F. App'x at 638.

Campbell's Motion does not request any discovery relevant to the issue of his exhaustion of administrative remedies.  ECF No. 48.  Because Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment shall be granted on that basis, the Court need not address Defendants' remaining arguments and discovery as to those issues is not necessary. Campbell's Motion for Discovery will therefore be denied.

## ANALYSIS

As noted, Defendants raise the affirmative defense that Campbell failed to exhaust administrative remedies prior to filing this lawsuit.  ECF No. 38-1.  A claim that has not been properly presented through the administrative remedy procedure must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e.  The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford,* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Notably, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). The Fourth Circuit addressed the meaning of "available" remedies in *Moore*, 517 F. 3d at 725, stating:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-*

*Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006).  Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are.  *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006).  Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively.  *Id.* at 87.  Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

In *Ross v. Blake*, 578 U.S. at 635, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA."  In particular, it rejected a "special circumstances" exception to the exhaustion requirement.  *Id.* at 638.  But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'"  *Id.* at 642.  "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it."  *Moore,* 517 F.3d at 725.

The *Ross* Court outlined three circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play."  *Ross*, 578 U.S. at 643.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."  *Id.*  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it."  *Id.* at 643-44.  The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Id.* at 644.

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for

11

"inmate complaint resolution." *See generally* Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 *et seq*.; Md. Code Regs. ("COMAR") 12.07.01B(1) (defining ARP).  The grievance procedure applies to the submission of "grievance[s] against . . .  official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7).  "A court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies" set forth in C.S. Title 10, Subtitle 2. C.S. § 10-210(a).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee.  C.S. § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO.  *See* C.S. § 10-206(b).  There is an established administrative remedy procedure process that applies to all Maryland prisons.  COMAR 12.07.01.05B 2.28.01.  Therefore, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

The ARP process consists of multiple steps.  For the first step, a prisoner is required to file his initial ARP with his facility's "managing official" COMAR 12.02.28.02(D)(1), which is defined by COMAR 12.02.28.02(B)(14) as "the warden or other individual responsible for management of the correctional facility" and defined under C.S. § 1-101(k) "as the administrator,

director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility."  Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later.  COMAR 12.02.28.09(B).

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP or fails to respond to the ARP within the established time frame.  The prisoner has 30 days to file an appeal to the Commissioner of Correction.  COMAR 12.02.28.14(B)(5).

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO.[7]  COMAR 12.02.28.18; C.S. § 10-206(a); COMAR 12.07.01.05(B).  When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response.  COMAR 12.07.01.04(B)(9)(a).  If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing."  C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B).  An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review.  C.S. § 10-207(b)(2)(ii).  However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings.  *See* C.S. § 10-208; COMAR 12.07.01.07-.08.  The conduct of such hearings is governed by statute.  *See* C.S. § 10-208; COMAR 12.07.01.07(D); *see also* Md. Code Ann., State Gov't § 10-206(a)(1)

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination.  C.S. § 10-209(b)(1)(ii); COMAR 12.07.01.10(A)(2).  However, if the

---

[7]     If the Commissioner fails to respond, the grievant shall file their appeal within 30 days of the date the response was due.  COMAR 12.07.01.05(B)(2).

ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* COMAR 12.07.01.10(B); C.S. § 10-209(b)(2)(c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* C.S. § 10-210. An inmate need not, however, seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Chase v. Peay*, 286 F.Supp. 2d at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative

14

rulings "to the highest possible administrative level"); *Pozo* 286 F.3d at 1024  (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

Importantly, exhaustion of administrative remedies after a complaint is filed with this court will not save a case from dismissal for failure to exhaust administrative remedies.  *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds).  In *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999), the court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."

Here, it is beyond question that Campbell filed his Complaint in this Court before exhausting administrative remedies; the parties agree that the Complaint was filed while the case was pending before the OAH.  However, Campbell asserts that the administrative remedy process was functionally "unavailable" to him as a result of the repeated and significant delays.  Plaintiff's Oppositional Response, ECF No. 54 at 17.  Campbell's concerns that the administrative process included significant and unexplained delays are well-taken: the decision of the OAH's administrative law judge was not entered until December 5, 2022, well over two years from the day Campbell filed his initial ARP on June 15, 2020.  However, the record demonstrates that the process was not delayed indefinitely and that Campbell continued to actively participate in the process until its completion.  Notably, he filed the instant Complaint just weeks after his hearing was postponed from February 23, 2022, to June 16, 2022, for the purpose of providing time for the prison to submit records requested by Campbell.  Furthermore, the ALJ did, after all, hold a hearing at which Campbell participated, and did issue a decision thereby finally completing the administrative process.

Campbell asked this Court to consider his claims while the same claims were pending before the OAH, thereby thwarting the purpose of the PLRA exhaustion requirement.  His assertions that the significant and repeated delays in the administrative process amounted to the process being unavailable to him does not excuse his failure to exhaust administrative remedies when the record shows that at the time he filed suit, he had administrative remedies available to him that he fully pursued.[8]  Accordingly, the Complaint must be dismissed without prejudice by separate Order which follows.


March 8, 2024
Date

_____/s/_____
Stephanie A. Gallagher
United States District Judge

---

[8] In their reply to Campbell's opposition, Defendants state that while they are entitled to dismissal for failure to exhaust administrative remedies, the doctrines of collateral estoppel and res judicata "should take precedence over a procedural dismissal without prejudice" now that Campbell's remedies have been fully exhausted.  ECF No. 57 at 8.  However, Defendants properly raised the affirmative defense and have not withdrawn it.  For his part, Campbell acknowledged that he filed suit while the administrative process was ongoing and suggested that he be permitted to voluntarily withdraw the Complaint filed March 15, 2022, and replace it with an amended complaint to be docketed subsequent to the exhaustion of remedies.  ECF No. 53.  While the Court understands the parties' desire to finally reach a conclusion in this matter without further delay, it cannot circumvent the PLRA's statutory requirements by ignoring a properly raised affirmative defense, as suggested by Defendants, or by manipulating the docket, as suggested by Campbell. Allowing such maneuvers in this case would require allowing them in others, eventually undermining the statutory requirements. As such, Campbell's Motion for Conditional Withdrawal will be denied.  While Campbell seeks a finding that the statute of limitations is equitably tolled, that issue is properly addressed if and when these claims are re-filed.